UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ERNEST J. DUBOSE,

                                Plaintiff,

-against-

COMMONWEALTH OF MASSACHUSETTS, AKINBAMI OJUGBELE, ABIODUN OJUGBELE, MORAYO OJUGBELE, KEVIN DEVLIN

                               Defendants.

Civil Action No. _____

# NON-PRISONER COMPLAINT FOR CIVIL RIGHTS VIOLATIONS

FILED IN CLERKS OFFICE
2020 JUN -8 AM 11:26
U.S. DISTRICT COURT
DISTRICT OF MASS.

## INTRODUCTION

1.  Plaintiff, Ernest J. Dubose, by and through his attorney, Dayo A. Dubose, brings this action against Defendants the Commonwealth of Massachusetts (the "State"), Akinbami Ojugbele ("Akinbami"), Abiodun Ojugbele ("Abiodun"), Morayo Ojugbele ("Morayo" and/or the "Girlfriend"), and Kevin Devlin ("Devlin" and/or the "Parole Officer") (collectively the "Defendants").

2.  Plaintiff was sentenced on May 22, 2015, to a six-year sentence in New Jersey for defrauding the New Jersey Department of Transportation of $10,000. On August 11, 2016, Plaintiff was released to a New Jersey parole plan which was ultimately transferred, by Plaintiff's request to the Commonwealth of Massachusetts in April of 2017.

3.  This case arises as a result of actions taken by Defendant Devlin in his official capacity as a State parole officer, in which Devlin colluded and conspired with the other Defendants to violate Plaintiff's Civil Rights by depriving him of his freedom, illegally preventing him from pursuing custody of his child, and illegally violating his right to privacy through the exchange of Plaintiff's personal information and other violations of Plaintiff's Civil Rights.

4.  Parole is the final stage of rehabilitation for those who have been convicted of crimes. Through monitoring and supervision, Parole officers occupy an especially important role in the reentry process in that they assist in guiding the paroleer back into society while contemporaneously ensuring the courts, and thereby the citizenry that the individual is ready to reenter society's ranks.

5.  As a trusted and empowered liaison between the paroleer and the courts during a term of parole, the integrity and professionalism of the parole officer represents the thin line

between freedom and prison for those being supervised. When that integrity and professionalism are replaced with malice and personally driven motivations, paroleers like the Plaintiff are irreparably harmed. In this case, Plaintiff lost his freedom and he lost time with his young child, neither of which can be replaced or reimbursed.

6. Acting under the color of state law and while leveraging the unique authority and access afforded to him by his position, Devlin and Plaintiff's former girlfriend devised a plan that simultaneously caused Plaintiff to be unjustly incarcerated, and led to his loss of the custody of his child. The custody of the child being the girlfriend's motive for the collusion.

**The State is the Exclusive Administrator of Parole for**
**Convicted Persons in the Commonwealth of Massachusetts**

7. The *Parole Board* of the Commonwealth of Massachusetts is established by M.G.L. c. 27, § 4 and has its exclusive powers and duties defined and authorized in the M.G.L. c. 27, § 5.

8. 120 CMR § 101.00 (1), (2), (3), and (4) of the Code establishes and authorizes the Parole Board's exclusive duties to include: "review, authorize, and promulgate the regulations, policies, and procedures of the agency. Issue parole permits, where appropriate, authorizing the holder to serve the remainder of the sentence in the community under the supervision of a parole officer, subject to revocation for violation of parole conditions. Determine under what conditions inmates may be released from incarceration to the community under parole supervision." M.G.L c. 27, § 5.

9. M.G.L. c. 276, §85 establishes the powers and duties of parole officers.

**Nexus Joint/Action Test and**
**Public Action Test**

10. The First Circuit has identified several tests for determining "whether a private party fairly can be characterized as a state actor." These are the public function test, the "entwinement" test, the state compulsion test, and the nexus/joint action test. *Logiodice v. Trs. of Me. Cent. Inst.*, 296 F.3d 22, 26 (1st. Cir. 2002). The burden to show that a private party's actions constitute state action rests with the plaintiff. *Mead v. Independence Ass'n*, 684 F.3d 226, 231 (1st Cir. 2012).

11. In this case, Defendant Devlin can be held accountable as a State actor pursuant to the nexus joint/action test and the public action test.

12. The public function doctrine permits private Parties to be considered state actors where they are performing services that have been historically "the sole province of government, " such as conducting elections or governing towns. *Logiodice*. The purpose underlying this exception is to prevent states from avoiding their responsibilities by delegating public functions to private entities. *Johnson v. Pinkerton Acad.*, 861 F.2d 335, 338 (1st Cir. 1988). It is not enough, though, that the function be sometimes or often performed by the state; "the function must be one exclusively reserved to the State." *Logiodice*, 296 F.3d at 26 (internal quotations omitted) (emphasis in original). The measure of whether a particular function is public is based on "historical practice, " not on "a normative judgment." Id.

13. The State is the sole and exclusive administrator of parole and similar services in the Commonwealth of Massachusetts. This has been the State's role and responsibility since the establishment of the Parole Services office.

14. In this action Devlin's actions were committed while acting in his official capacity as Parole officer authorized by the State. The State's parole officers are exclusively

authorized to perform supervisory, reporting, revocation and other services on behalf of the State.

15. In Mendez, the Court held that private parties cannot be viewed as State actors simply by virtue of following regulations or in this case for performing their duties. See *Mendez*, 739 F2d at 18. However, unlike Mendez, Devlin's actions were committed while performing duties under the color of State law, but the dereliction of his duties were not committed because of his simply performing the responsibilities of his job or observing regulations. Devlin acted with malice and forethought in conspiring with others to violate the Plaintiff's rights and deprive him of custody of his daughter. While serving as an officer of the State, Devlin used his authority to commit the acts alleged in this Complaint.

16. Next, under the nexus/joint action test, a private party is considered a state actor where "the state so far insinuated itself into a position of interdependence with [Defendants] that it [should be considered] a joint participant in their actions." *Estades-Negroni*, 412 F.3d at 6 (second alteration in original) (internal quotations omitted). The Courts have held that allegations must be such that they tend to show that the state intimately involved itself in the initial deprivation of a right, or in the day-to-day affairs, or that the private actors were "bound to" the state. Id. At 6-7.

17. In the current matter, as a parole officer for the State, Devlin is "bound" to the State and is properly added to this Complaint as a Defendant.

## JURISDICTION AND VENUE

18. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

19. Venue properly lies within the District of Massachusetts because this is an action against and officer, employee, and/or agency of the United States, the Plaintiff resides in this

judicial district, and a substantial part of the events giving rise to this action have occurred in this judicial district. See 28, U.S.C. § 1391 (b)(1) and (2).

## PARTIES

20. Plaintiff Ernest J. Dubose brings this suit by and through his attorney Dayo A. Dubose. Plaintiff is a resident of the Commonwealth of Massachusetts.

21. Defendant, the Commonwealth of Massachusetts and its Commissioner of Parole, Edward J. Dolan, and his office oversee the Massachusetts Parole Service and the Office of the Community Corrections, which includes 105 parole departments and (18) community corrections centers, the Electronic Monitoring Center, and the Trial Court Community Service Program. Parole officers working in adult criminal courts (Superior Court, Boston Municipal Court, and District Court) supervise pre-trial and post-disposition cases.

22. Defendants Akinbami Ojugbele, Abiodun Ojugbele, and Morayo Ojugbele are residents of the State of New Jersey.

23. Defendant Kevin Devlin is a parole officer, authorized by the Commonwealth of Massachusetts and who is responsible for the supervision, reporting, investigation, revocation, and management of paroleers on behalf of the State.

## STATEMENT OF FACTS

24. On May 22, 20115, Plaintiff was sentenced to a (6) year term of incarceration after having been found guilty at trial in a New Jersey State court for Conspiracy to Commit False Contract Payment Claims (2nd degree), Official Misconduct (2nd degree), Bribery – Violation of Official Duty (2nd degree), Theft by Deception (2nd degree), and False Payment Contract Payment Claims (2nd degree) (the "Charges"). See *Presentence Investigation Report* ("PSI").

25. On August 11, 2016, Plaintiff was released on a parole plan in New Jersey. The parole term had a maximum expiration date of July 8, 2019. Plaintiff was approved to live with Defendant Morayo during his term of parole.

26. Plaintiff requested to have his parole transferred to the Commonwealth of Massachusetts in April of 2017 where he and Defendant Morayo intended to live with Plaintiff's mother. Plaintiff had successfully observed all of the rules of his release to that point such that the New Jersey parole officer did not object to the request.

27. At the behest of Morayo, Morayo moved out of the Plaintiff's mothers home May of 2017 first in Everett, Massachusetts and eventually Quincy, Massachusetts. The Plaintiff continued staying nights at Morayo' s home. Delvin was notified of his frequent stays at the home of Morayo.

28. On June 1, 2017 Plaintiff reported to the parole office in Massachusetts where he met Defendant Devlin for the first time.

29. On June 22, 2018 the Plaintiff and Morayo had a child in common.

30. In August of 2018, Plaintiff informed Defendant Devlin that he and Morayo were splitting up and that he would no longer be staying part-time in Quincy, MA with Morayo and was back full time at his Mother's home.

31. In September 2018 Morayo took that child and ran to the home of the other named defendants Akinbami Ojugbele and Abiodun Ojugbele and refused to return the child to Massachusetts.

32. In September 2018 the Plaintiff was sought an emergency order in Norfolk County Probate Court in Massachusetts forcing the defendant Morayo to return the subject child to Massachusetts.

33. In September 2018 Morayo sent emails to the Plaintiff threatening to call his

parole officer if he did not withdraw the petition. When the Plaintiff refused to withdraw the petition the above named defendants began planning how they could force the Plaintiff to miss the court date in the aforementioned emergency order

34. Between September 2018 and October 2018 the defendant's had numerous conversation concerning the Plaintiff. The goal of those conversations was utilize the protecting order process in order to force the Plaintiff to miss the family court date, which would allow Morayo to move out of state with the Plaintiff and Morayo's child in common.

35. On October 8, 2018 the plaintiff was called into the Office of Devlin and was notified that his parole was temporarily revoked. The Plaintiff was notified that because he had a temporary protective order placed against him that it was necessary to violate his parole.

36. On October 10, 2018 a protective order was filed against the Plaintiff by Morayo.

37. Devlin reported that Plaintiff had an uneventful and successful parole until November 2018 when New Jersey officials received a violation report that required the temporary revocation of Plaintiff's parole. The violation report was issued because Morayo had filed a restraining order against Plaintiff on October 10, 2018.

38. The violation reports also indicated that a number of other parole violations were discovered by the Massachusetts parole office, including Plaintiff's travels out of state and out of the country without permission, and maintaining an alternate address without notifying the parole office.

39. On November 16, 2018, a parole warrant was issued for Plaintiff, he was called into the parole office, and his parole was temporarily revoked. Plaintiff was taken into custody that same day.

40. Later in November 2018 a 2-party hearing was held in Norfolk County Court regarding the temporary protective order filed by Morayo. The result of the hearing was the termination of the protective order for want of evidence.

41. A parole violation hearing was conducted on January 25, 2019 by hearing officer Eric S. Caravella for the State Parole Board District Office #11 in New Brunswick. Plaintiff appeared via video teleconference from Southern State Correctional Facility and represented in person by his attorney, Migir Ilganayev.

**Parole Hearing Violation Allegations**
**And Evidence in Support Thereof**

42. During the parole hearing, the Division of Parole (Division) was represented by Senior Parole Officer Juanita Cherry of District Office (DO) #20 (the "Senior Parole Officer") who appeared telephonically. The Senior Parole Officer read Plaintiff's alleged parole violations into the record. The violations included violations of:

> a. "MA Parole Condition #1: Subject failed to conduct himself in the manner of a responsible citizen. This is evidenced by subject's conduct on or before October 10, 2018, which resulted in an Abuse Prevention Order (APO) being issued by the Quincy District Court. Subject entered a not guilty plea."
>
> b. "NJ Parole General Condition #7/ MA Parole Special Condition: Subject failed to obtain permission prior to leaving the state of his approved residence for any purpose. This is evidenced by subject's travel without permission to: Indiana from May 18, 2018, to May 26, 2018; Georgia from March 22, 2018, to March 25, 2018; as well as to New York, Boston, Mexico, Jamaica, Cayman Islands, New Orleans and Alabama. Subject entered a plea of guilty with an explanation to his violation with regard to the Indiana and Georgia trips only. Subject entered a plea of not guilty to the rest of the alleged violations."
>
> c. "MA Parole General Condition #2: Subject failed to notify his parole officer of any change in residence. This is evidenced by subject's failure to notify his parole officer of his maintaining an alternate address during his parole supervision. Subject entered a plea of not

>  guilty to this violation". See Exhibit A – Parole Hearing Transcript at page 2.

43. The Senior Parole Officer testified that that the following documents were entered as evidence of Plaintiff's alleged violations:

> "Regarding MA Parole General Condition #1, the parole officer entered the following documents into the record: APO Docket #1856RO1071, issued by Ms. Morayo Ojugbele against subject on October 10, 2018, by Quincy District Court (three pages, marked into evidence as S1); MA Parole Violation Report authored by Parole Officer Kevin Devlin on October 14, 2018, (two pages, marked into evidence as S2); APO Docket 1856RO1071 termination order dated November 9, 2018, (two pages, marked into evidence as S3); and MA Parole Board Client Case Summary Report dated August 28, 2018, to November 6, 2018 (five pages, marked into evidence as S4). The parole officer testified that S1 shows an APO was issued against subject on October 10, 2018. The parole officer read from the narrative in S2 which stated that subject was doing well under supervision until his relationship with his girlfriend (Ms. Ojugbele) soured and a restraining order (APO) was filed. The parole officer testified that S3 showed the APO was later terminated on November 9, 2018. The parole officer referenced S4 and testified that the supervision entries relevant to the investigation of and issuance of the restraining order were redacted and marked confidential." See Exhibit A at pg. 2.

44. Mr. Ilganayev conducted a cross examination of the Senior Parole Officer. In response to Mr. Ilganayev's questions, the Senior Parole Officer testified that according to S2, Devlin became aware of a number of parole violations committed by Plaintiff; that the issuance of a restraining order is a very serious matter; that Plaintiff was returned to custody based on all of his parole violations; and that she is aware the APO had been dismissed. The Senior Parole Officer further testified that she is aware that Devlin had spoken to Morayo; that Morayo made allegations that Plaintiff had been abusive; that it is possible Morayo was upset that Plaintiff was trying to gain custody of their child and made false accusations to obtain an APO; and that Devlin did not provide any proof of abusive behavior such as text messages. See Exhibit A at 2.

**The Evidence Does Not Support the Allegations, the**
**Testimony Shows that Devlin "Jumped the Gun" in Arresting Plaintiff**

45. The Senior Parole Officer then testified that Devlin provided no proof of abusive behavior leading to the issuance of an APO; that the APO was later dismissed after a two-party hearing; that the APO was only temporary; that the issuance of a temporary APO does not meet the standard to revoke supervision; that a final restraining order was never issued; but that Devlin did not await the result of the restraining order and "jumped the gun" by arresting Plaintiff too soon.

46. Mr. Ilganayev pointed out that the suspicious timing of Defendant Morayo's application for an APO in relation to an email exchange between Morayo and Plaintiff that occurred (2) days earlier on October 8, 2018.

47. The email showed that Plaintiff felt that he could no longer negotiate with Morayo in good faith regarding the custody of their daughter, and that Plaintiff planned to take Morayo to court. Mr. Ilganayev stated that Morayo filed for the APO to stop Plaintiff in his efforts to bring his custody battle to family court.

48. Mr. Ilganayev testified as to his entry of the following evidence:

> "An email from Ms. Ojugbele to subject dated October 8, 2018, (one page, marked into evidence as D2); Norfolk Probate and Family Court Motion for Temporary Orders dated October 3, 2018, (two pages, marked into evidence as D3); and Progressive Auto Insurance policy documents (three pages, marked into evidence as D4). Subject testified that D2 shows that Ms. Ojugbele was asking subject to unblock her so they could discuss their daughter, and also that he rescind his court order so they can figure out their daughter's visitation schedule. Subject testified that this email was sent two days before Ms. Ojugbele filed for the APO. Subject testified that D3 shows he filed an application for custody of his daughter and the court ordered that all communication with Ms. Ojugbele occur through a "Family Wizard" so that their conversations can be mediated and recorded. Subject testified that this Order was signed one week before Ms. Ojugbele filed for an APO. Lastly, subject testified that Ms. Ojugbele claimed in her affidavit for the

APO that subject stole her car, but D4 reflects that the car actually belonged to him." See Exhibit A at 3.

49. Throughout the hearing, Mr. Ilganayev was able to illustrate through the evidence and the Senior Parole Officer's testimony that Morayo was dishonest, that Plaintiff had not committed any violations outside of those that he pled guilty to, that the testimony of Morayo and the other Defendants was untrue, and that Plaintiff should not have been arrested for the violations committed. The Hearing Officer labeled Morayo "problematic" and "a barrier to (Plaintiff's) successful completion of parole." See Exhibit A at 6.

50. The Hearing Officer Recommendation reflected Plaintiff's innocence and Morayo and Devlin's malicious behavior:

> "The record reflects that subject was compliant with supervision except for three unauthorized trips out-of-state. The parole officer testified that because of his level of compliance, it is likely that subject would have been granted permission for these trips had he asked. The violations are not serious or persistent, and revocation is not desirable. However, it is recognized that subject is in need of closer supervision. It is recommended that subject be continued on parole to any detainer(s) initially, and then to the Electronic Monitoring Program for the duration of his term of supervision. It is also recognized that subject's volatile relationship with Ms. Ojugbele is problematic and poses a potential barrier to successful completion of parole. Therefore, it is also recommended that subject refrain from contact with Morayo Ojugbele until such time as they enter an appropriate couple's counseling program as approved by the assigned parole officer or until contact is authorized by the appropriate court." See Exhibit A at 6.

51. On several occasions, Defendants Morayo, Akinbami, and Abiodun threatened Plaintiff with prison if he did not terminate his custody suit against Morayo. Morayo had persistently threatened to contact Plaintiff's parole officer, Devlin if he did not comply with her demands.

52. As a result of the testimony at the Parole Hearing, it was proven that Devlin met with the other Defendants specifically to discuss "ways to have Plaintiff arrested" and what

would need to occur to make that happen. Also that Morayo and the other Defendants had threatened Plaintiff with prison if he did not terminate his pursuit of custody of his daughter.

53. The Norfolk County Court found Morayo's claims of abuse and the need for an APO without merit and dismissed the temporary APO. The Senior Parole Officer Testified that a temporary APO does not meet the barrier required for arrest and revocation of a parolee. The Senior Parole Officer also testified that Devlin "jumped the gun" in arresting Plaintiff before the APO hearing and ruling were held and a final order rendered. The Hearing Officer, after hearing all testimony and reviewing all of the relevant evidence, stated that Plaintiff had maintained a high level of compliance on parole and that Morayo was problematic and a barrier to Plaintiff's success on parole.

54. The tangible impact of the Defendants' conspiratorial actions against Plaintiff is that he has lost irreplaceable time with his daughter (once he was arrested, Plaintiff had no chance of winning a custody suit), and he lost his freedom and employment.

55. Defendants showed no respect for Plaintiff's rights, choosing instead to dismiss the value of his rights in favor of their respective desires. Devlin understood that disastrous impact of his counsel to Morayo although he also knew that her allegations were fabricated. Devlin assisted in developing the fabrication then later, he executed on it by arresting the Plaintiff and revoking his parole.

56. Defendants' violations of Plaintiff's civil rights are no less egregious and therefore no less punishable than the punishment incurred by Plaintiff when it was falsely alleged that he violated the rules of his parole. All of Devlin's actions were undertaken in his official capacity as an authorized parole officer for the Commonwealth of Massachusetts.

## CAUSES OF ACTION

### COUNT I
### 42 U.S.C. § 1983 – Violation of Civil Rights

57.   Plaintiff incorporates by reference all of the preceding paragraphs as though fully set forth herein.

58.   Defendants' are "persons" pursuant to U.S.C. 1983 who acted "under the color of state law" and deprived Plaintiff of rights secured by the U.S. Constitution. Defendant Devlin acted in his capacity as a parole officer for the Commonwealth of Massachusetts who is the exclusive administrator of parole in Massachusetts.

59.   Specifically, while acting under the color of State law, Defendants deprived Plaintiff of his liberty and his Constitutional Right to due process (Fourteenth Amendment) as well as other federal and state rights.

60.   As a result of Defendants' violations of 42 U.S.C. § 1983 and Plaintiff's Constitutional Rights, Plaintiff is entitled to actual and statutory damages pursuant to 42 U.S.C. § 1983, in an amount to be determined at trial by a jury; reasonable attorneys fees and costs pursuant to U.S.C. § 1983.

### COUNT II
### Massachusetts General Law Chapter 265 § 37 – Violations of Constitutional Rights

61.   Plaintiff incorporates by reference all of the preceding paragraphs as though fully set forth herein.

62.   Defendants Morayo, Akinbami, and Abiodun willfully injured Plaintiff through intimidation and threats in their attempts to oppress Plaintiff's enjoyment of his Constitutional right to liberty and freedom as well as other rights afforded Plaintiff by the U.S. Constitution and the laws of the Commonwealth of Massachusetts.

63.     As a result of Defendants' violations of M.G.L. c. 267 § 37, Plaintiff is entitled to up to $1,000 per Defendant and other damages as this Court may determine.

### COUNT III
**Massachusetts General Law Chapter 6 § 178 – Requesting or Obtaining Criminal Offender Record Information or Self-Audit Under False Pretenses; Unlawful Communication of Record Information; Falsification of Record Information; Unlawful request or Requirement that Person Provide his/her Record Information**

64.     Plaintiff incorporates by reference all of the preceding paragraphs as though fully set forth herein.

65.     Defendants Morayo, Akinbami, Abiodun and Devlin illegally shared Plaintiff's criminal offender record information and falsified Plaintiff's offender record information by conspiring to concoct reasons to get Plaintiff arrested for a violation of his parole. Defendants false information was used to cause the issuance of temporary APO, to have Plaintiff arrested for parole violations, terminate Plaintiff's child custody suit. All of these actions predicated on false information provided by Defendants and added to Plaintiff's record.

66.     As a result of Defendants' violations of M.G.L. c. 6 § 178, Plaintiff is entitled to $50,000 from Defendant the Commonwealth of Massachusetts and $5000 each from Defendants Devlin, Morayo, Abiodun, and Akinbami.

### RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgement in favor of Plaintiff for:

   a. Statutory Damages,

   b. Actual damages equal to the amounts lost in wages and opportunity,

   c. Attorney's fees, litigation expenses and costs of suit,

   d. Treble damages where permitted,

e. Five million dollars (5,000,000) in Compensatory, nominal and punitive damages,

f. Such other relief as is appropriate.

## JURY TRIAL DEMANDED

Dated: June 5, 2020

                                                Respectfully submitted
Plaintiff,
Pro-Se:

**/s/ Ernest Dubose**
Pro-Se
61 Mclellan Street
Boston, MA, 02121
617-860-8846
dayodubose@icloud.com