## NEW JERSEY STATE PAROLE BOARD
## NOTICE OF DECISION
## PAROLE SUPERVISION

**Name:** Ernest Dubose      **SBI#:** 314757E      **Location:** SSCF

Be advised that on January 30, 2019, the New Jersey State Parole Board – Board panel reviewed the attached summary prepared as a result of the revocation hearing conducted on January 25, 2019, and concurs with the findings of fact by the Hearing Officer. The Board panel finds that clear and convincing evidence exists that you violated the following condition(s) of your parole supervision:

Parole General Condition #7 / MA Parole Special Condition – Obtain permission prior to leaving the state of the approved residence for any purpose.

The Board panel finds that your commission of the above-noted violation(s) is not serious or persistent and that revocation is not desirable. Accordingly, the Board panel has rendered the following determination:

PAROLE SUPERVISION IS HEREBY NOT REVOKED. YOU ARE CONTINUED ON PAROLE TO ANY DETAINER(S) INITIALLY, THEN TO THE ELECTRONIC MONITORING PROGRAM (EMP) ALSO REFRAIN FROM CONTACT WITH OR THROUGH A THIRD PARTY, BUT NOT LIMITED TO, VERBAL, PHYSICAL, WRITTEN, OR ELECTRONIC WITH MORAYO OJUGBELE UNTIL YOU AND MS. OJUGBELE ENTER AN APPROPRIATE COUPLE'S COUNSELING PROGRAM APPROVED BY THE ASSIGNED PAROLE OFFICER, OR UNTIL CONTACT IS AUTHORIZED BY THE APPROPRIATE COURT AND YOU ARE SUBJECT TO THE FOLLOWING SPECIAL CONDITION(S):

As an additional special condition of parole, prior to the effectuation of this decision, you are required to comply with all rules and regulations of your institutional housing location. Failure to do so may result in the initiation of revocation proceedings.

Successful completion of EMP is now a special condition of parole.

**TRUDY STEINHARDT**                                                           **ROBERT BALICKI**
Board Member                                                                        Board Member

Date of Warrant: November 16, 2018
Date of Custody: November 16, 2018
Adjusted Max Date: July 8, 2019

Name: Ernest Dubose                      SBI#: 314757E                          Location: SSCF

## HEARING SUMMARY

**INTRODUCTION:**

A parole violation hearing was conducted on January 25, 2019, by Hearing Officer Eric S. Caravella from the State Parole Board District Office #11 in New Brunswick. Subject appeared via video teleconference (VTC) from Southern State Correctional Facility (SSCF). Representing the Division of Parole (Division) was Senior Parole Officer Juanita Cherry of District Office (DO) #20 appearing telephonically. Representing subject was attorney Migir Ilganayev, Esq., who appeared via VTC from DO #4 in Jersey City.

Mr. Ilganayev acknowledged having received a copy of the Notice of Probable Cause Hearing (C39) dated December 11, 2018, containing the alleged violations of the conditions of mandatory supervision, the evidence with respect to those violations and subject's rights with respect to the parole violation hearing process. Mr. Ilganayev was present pursuant to subject's right to representation by counsel, and he confirmed that he had sufficient opportunity to review the allegations with his client prior to the start of the hearing.

Parties were informed of the nature and purpose of the parole violation hearing and of the right to a separate probable cause hearing (PCH) and determination, as well as the right to a final parole revocation hearing (FRH). The standard of evidence for each proceeding was explained and, upon parties acknowledging an understanding of the standard of evidence and the process, Mr. Ilganayev elected to waive the PCH and proceed directly to conducting the FRH.

Subject was sentenced on May 22, 2015, to an aggregate six-year term of incarceration on the offenses of Conspiracy to Commit False Contract Payment Claims, second degree, Official Misconduct, second degree, Bribery – Violation of Official Duty, second degree, Theft by Deception, second degree, and False Contract Payment Claims, second degree. According to the Pre-Sentence Investigation (PSI), subject and a codefendant defrauded the New Jersey Department of Transportation of $10,000. Subject was paroled on August 11, 2016, with a maximum expiration date of July 8, 2019.

This hearing officer administered the oath to all testifying parties.

The parole officer testified that the warrant was issued on November 16, 2018, by Sergeant Van Mater and enforced the same date at MCI Cedar Junction. The parole officer testified that the warrant was issued for "parole violations."

Subject is currently 38 years of age.

**PAROLE OFFICER'S OVERVIEW:**

The parole officer reviewed subject's term of supervision by testifying to the following:

Subject commenced supervision on August 11, 2016, and was initially released to a New Jersey (NJ) parole plan to reside with his girlfriend. Subject advised his parole officer that he and his girlfriend wished to move to Boston to reside with subject's mother. Subject requested to transfer his supervision to the Commonwealth of Massachusetts (MA) in April of 2017. The Division did not oppose subject's transfer request because he was doing well under supervision. Subject reported to MA Parole on June 21, 2017. MA Parole reported to NJ that subject continued to do well under supervision. In August of 2018, subject notified his parole officer that he had split up with his girlfriend after the birth of their daughter and that his girlfriend had moved out of his mother's house to an apartment in Quincy. Subject's parole term remained uneventful until November of 2018 when NJ received a Violation Report Requiring Retaking which indicated a 14-day restraining order had been filed against subject by his girlfriend on October 10, 2018. The report also indicated that a number of other parole violations were discovered by MA Parole, including subject traveling out-of-state and out-of-country without approval, as well as maintaining an alternate address.

**Name:** Ernest Dubose                    **SBI#:** 314757E                    **Location:** SSCF

## SUMMARY OF TESTIMONY/EVIDENCE SUBMITTED:

The parole officer read the following alleged violations of parole into the record as reflected in the C39:

MA Parole General Condition #1 – Subject failed to conduct himself in the manner of a responsible citizen. This is evidenced by subject's conduct on or before October 10, 2018, which resulted in an Abuse Prevention Order (APO) being issued by the Quincy District Court. *Subject entered a plea of not guilty to this violation.*

NJ Parole General Condition #7 / MA Parole Special Condition[1] – Subject failed to obtain permission prior to leaving the state of his approved residence for any purpose. This is evidenced by subject's travel without permission to: Indiana from May 18, 2018, to May 26, 2018; Georgia from March 22, 2018, to March 25, 2018; as well as to New York, Boston, Mexico, Jamaica, Cayman Islands, New Orleans and Alabama. *Subject entered a plea of guilty with an explanation to this violation with regard to the Indiana and Georgia trips only. Subject entered a plea of not guilty to the rest of the alleged violations.*

MA Parole General Condition #2 – Subject failed to notify his parole officer of any change in residence. This is evidenced by subject's failure to notify his parole officer of his maintaining an alternate address during his MA parole supervision. *Subject entered a plea of not guilty to this violation.*

Regarding MA Parole General Condition #1, the parole officer entered the following documents into the record: APO Docket #1856RO1071, issued by Ms. Morayo Ojugbele against subject on October 10, 2018, by Quincy District Court (three pages, marked into evidence as S1); MA Parole Violation Report authored by Parole Officer Kevin Devlin on October 14, 2018, (two pages, marked into evidence as S2); APO Docket #1856RO1071 termination order dated November 9, 2018, (two pages, marked into evidence as S3); and MA Parole Board Client Case Summary Report dated August 28, 2018, to November 6, 2018 (five pages, marked into evidence as S4). The parole officer testified that S1 shows an APO was issued against subject on October 10, 2018. The parole officer read from the narrative in S2 which stated that subject was doing well under supervision until his relationship with his girlfriend (Ms. Ojugbele) soured and a restraining order (APO) was filed. The parole officer testified that S3 showed the APO was later terminated on November 9, 2018. The parole officer referenced S4 and testified that the supervision entries relevant to the investigation of and issuance of the restraining order were redacted and marked confidential.

Mr. Ilganayev conducted a cross examination of the parole officer. In response to Mr. Ilganayev's questions, the parole officer testified that according to S2, the MA parole officer became aware of a number of parole violations committed by subject; that the issuance of a restraining order is a very serious matter; that subject was returned to custody based on all of his parole violations; and that she is aware the APO had been dismissed. The parole officer further testified that she is aware the MA parole officer had spoken to subject's girlfriend; that subject's girlfriend made allegations that subject had been abusive; that it is possible subject's girlfriend was upset that subject was trying to gain custody of their child and made false accusations to obtain an APO; and that the MA parole officer did not provide any proof of abusive behavior such as text messages.

Subject then testified that the MA parole officer provided no proof of abusive behavior leading to the issuance of an APO; that the APO was later dismissed after a two-party hearing; that the APO was only temporary; that the issuance of a temporary APO does not meet the standard to revoke supervision; that a final restraining order was never issued; but that parole did not await the result of the restraining order and "jumped the gun" by arresting him too soon.

Mr. Ilganayev then entered the following document into the record: email exchange between subject and Ms. Ojugbele on October 7, 2018, (one page, marked into evidence as D1). Mr. Ilganayev explained that this email exchange shows

---

[1] Subject's alleged violation of the MA Special Condition was listed separately from NJ General Condition #7 in the C39. The language of the MA Special Condition is "Comply with sending state's conditions." The Division alleges subject violated NJ General Condition #7, thereby violating the MA Special Condition. As the circumstances of the alleged violations are identical, the two conditions were combined for the purposes of this summary and recommendation.

Page 2 of 6

**Name:** Ernest Dubose                    **SBI#:** 314757E                    **Location:** SSCF

that subject felt he was no longer able to negotiate with Ms. Ojugbele in good faith regarding the custody of their daughter, and that subject planned to take her to court. Mr. Ilganayev stated that Ms. Ojugbele then obtained an APO to stop subject from taking their daughter from her, and because she knew that it would result in subject's return to custody.

Subject then entered the following documents into the record: email from Ms. Ojugbele to subject dated October 8, 2018, (one page, marked into evidence as D2); Norfolk Probate and Family Court Motion for Temporary Orders dated October 3, 2018, (two pages, marked into evidence as D3); and Progressive Auto Insurance policy documents (three pages, marked into evidence as D4). Subject testified that D2 shows that Ms. Ojugbele was asking subject to unblock her so they could discuss their daughter, and also that he rescind his court order so they can figure out their daughter's visitation schedule. Subject testified that this email was sent two days before Ms. Ojugbele filed for the APO. Subject testified that D3 shows he filed an application for custody of his daughter and the court ordered that all communication with Ms. Ojugbele occur through a "Family Wizard" so that their conversations can be mediated and recorded. Subject testified that this Order was signed one week before Ms. Ojugbele filed for an APO. Lastly, subject testified that Ms. Ojugbele claimed in her affidavit for the APO that subject stole her car, but D4 reflects that the car actually belonged to him.

*At this point in the hearing, SSCF Custody Staff returned subject to his housing unit. Before he departed, subject and his counsel were granted an opportunity to consult privately and afterward they both consented to the hearing continuing in subject's absence with Mr. Ilganayev continuing to represent subject. The parole officer also consented to continuing the hearing in subject's absence.*

With regard to NJ Parole General Condition #7 / MA Parole Special Condition, the parole officer entered the following documents into the record: MA Parole Conditions signed June 21, 2017, (one page, marked into evidence as S5); printouts of airline flight itinerary for subject and Ms. Ojugbele for a trip from Boston to Atlanta and back from March 22, 2018, to March 25, 2018, (six pages, marked into evidence as S6); printouts of email from Ms. Ojugbele to MA Parole Officer Devlin depicting cell phone photos of a trip to Maine in August of 2017 (six pages, marked into evidence as S7); printouts of airline flight itinerary and hotel confirmation for subject and Ms. Ojugbele for a trip from Philadelphia to New Orleans and back from March 4, 2017, to March 15, 2017, (15 pages, marked into evidence as S8); printouts of email from Ms. Ojugbele to MA Parole Officer Kevin Devlin depicting cell phone photos dated from August of 2016 to March of 2017 with location tags of Brooklyn, Boston, New Jersey, Gulf of Mexico, Caribbean Sea, Montego Bay, Grand Cayman, Cozumel Island, and New Orleans (11 pages, marked into evidence as S9); printouts of email from Ms. Ojugbele to MA Parole Officer Kevin Devlin depicting cell phone photos of a trip to Mobile, AL in February of 2017 (nine pages, marked into evidence as S10).[2] The parole officer testified that these documents were sent to the MA parole officer by subject's girlfriend; that the flight and hotel itineraries show that subject and his girlfriend took trips out of state together; and that the photos presented, although illegible, contain location tags that reflect subject and his girlfriend visited a number of locations together both out-of-state and out-of-country.

Mr. Ilganayev entered the following documents into the record: emailed color photo of the first page of subject's passport (one page, marked into evidence as D5); MA Parole Board Client Case Summary Reports dated July 17, 2017, to September 5, 2017, (one page, marked into evidence as D6); MA Parole Board Client Case Summary Reports dated June 21, 2017, to October 16, 2018, (six pages, marked into evidence as D7). Mr. Ilganayev stated that the itineraries presented may have been planned, but subject never went on those trips. Mr. Ilganayev stated that subject surrendered his passport prior to being released on parole; that subject could not have traveled out of the country without one; and that D5 shows that his current passport was not issued until February 14, 2018. Mr. Ilganayev stated that they requested a complete version of subject's MA Parole Board Client Case Summary Reports, but they were only sent the odd pages (D7) and page 10 (D6). Mr. Ilganayev stated that subject had permission to travel to Maine but that the evidence of this permission may be documented in one of the missing pages of the Client Case Summary

---

[2] Mr. Ilganayev objected to the introduction of all of the photos as they are entirely illegible. The parole officer testified that her photos are also illegible. The photos contained within this hearing officer's C39 are also illegible. This hearing officer allowed the introduction of the photos and advised Mr. Ilganayev that he may challenge their authenticity or contents on cross examination.

**Name:** Ernest Dubose               **SBI#:** 314757E                  **Location:** SSCF

Report. Mr. Ilganayev stated that given the evidence of Ms. Ojugbele's dishonest nature, the information she allegedly provided should be taken with a grain of salt. Mr. Ilganayev stated that nothing can be discerned from the photos entered as they are completely illegible, and stated also that photo location tags can be easily manipulated.

The parole officer testified that the Parole Violation Report (S2) clearly lists subject's unapproved travel to Maine as one of his violations. The parole officer referenced page two of the document which specifically indicates subject traveled to Maine without a travel permit or permission from the parole officer.

Regarding MA Parole General Condition #2, the parole officer entered the following documents into evidence: Wellington Parkside Apartments Lease Agreement in subject's and Ms. Ojugbele's names, signed by subject on April 12, 2017, (six pages, marked into evidence as S11); Wellington Parkside Occupancy Addendum and Free Rent Addendum in subject's and Ms. Ojugbele's names, signed by subject on April 12, 2017, (two pages, marked into evidence as S12); 550 Victory Road, Unit #227, Quincy, MA – Lease Agreement and Addenda in subject's and Ms. Ojugbele's names, signed by subject on March 21, 2018, (five pages, marked into evidence as S13). The parole officer testified that subject was approved to live with his mother in Boston; that subject signed a lease in Wellington Parkside Apartments (S11 and S12) for a lease term period of June 14, 2017, to June 30, 2018; that subject also signed a lease in Quincy (S13) for a lease term period of March 31, 2018, to March 30, 2019; that neither of these addresses are subject's parole-approved address; and that subject is in violation of the condition because he was maintaining an alternate address.

Mr. Ilganayev conducted a cross examination of the parole officer. In response to Mr. Ilganayev's questions, the parole officer testified that she has no proof that subject actually lived at either of these addresses.

Mr. Ilganayev entered the following documents into evidence: 550 Victory Road, Unit #227, Quincy, MA – Lease Agreement and Addenda in subject and Ms. Ojugbele's names, signed by subject on March 21, 2018, (five pages, marked into evidence as D8). Mr. Ilganayev stated that subject may have signed leases at addresses other than his mother's house, but subject never resided at either place. Mr. Ilganayev stated that D8 shows a rental time period that overlaps S12, which is evidence that subject was not residing at Wellington Parkside. Mr. Ilganayev stated that subject merely cosigned a lease for an apartment in Quincy where his girlfriend could reside after their relationship soured and she moved out of subject's mother's house.

With regard to subject's trip to Georgia from March 22, 2018, to March 25, 2018, Mr. Ilganayev stated that subject admits to taking this trip without permission; that subject's girlfriend was experiencing a problematic pregnancy; that they traveled to Georgia to visit subject's cousin; that subject wanted to introduce his girlfriend to his family before her pregnancy progressed too far to travel; that he regrets traveling without permission; that he did so in good faith; and that subject did not commit any crimes, hurt anyone or do any drugs while he was traveling.

With regard to subject's trip to Indiana from May 18, 2018, to May 26, 2018, Mr. Ilganayev entered the following document into the record: acceptance letter from Kelley School of Business (two pages, marked into evidence as D9). Mr. Ilganayev stated that subject admits to taking this trip without permission; that he did so to attend school orientation; that he regrets traveling without permission; that he did so in good faith; and that subject did not commit any crimes, hurt anyone or do any drugs while he was traveling.

The parole officer testified that the reports indicate subject was in compliance with supervision at the time, and had subject communicated his need to travel is likely that the MA parole officer would have granted subject permission.

**ATTORNEY'S CLOSING STATEMENT:**

In closing, Mr. Ilganayev stated that the purpose of parole is to enable rehabilitation; that subject has done an incredible amount of work to return to society as a productive citizen; and that a return to prison would ruin everything he has done. Mr. Ilganayev stated that subject enrolled in school and was working and providing for his child.

Name: Ernest Dubose                                SBI#: 314757E                                Location: SSCF

Mr. Ilganayev stated that clear and convincing evidence does not exist that subject seriously or persistently violated the conditions of parole. Mr. Ilganayev stated that no evidence was presented that subject was abusive; that subject's girlfriend is an unreliable source; and that she used the system to incarcerate subject.

Mr. Ilganayev stated that subject was not using drugs or alcohol; did not commit any crimes; is a student and a father; and has already missed a significant portion of his daughter's life. Mr. Ilganayev stated that subject has an ongoing custody battle for his daughter that he can better fight when he is outside of prison.

Mr. Ilganayev stated that subject does admit to traveling without permission; but that these two violations in two and a half years are no basis for revocation of supervision. Mr. Ilganayev stated that subject has been incarcerated since October of 2018 and has more than paid for his mistakes.

**PAROLE OFFICER'S RECOMMENDATION:**

The parole officer testified that subject's term of supervision was uneventful until his relationship with Ms. Ojugbele soured and a 14-day restraining order was issued. The parole officer testified that numerous other parole violations were then discovered. The parole officer testified that no evidence was presented that subject cancelled his trips as he claimed. The parole officer testified that the itineraries show that subject traveled without permission. The parole officer testified that had subject communicated with his parole officer, it is likely he would have received permission to travel. The parole officer testified that it is not a minor violation to leave the state without approval, nor is it minor to have a restraining order issued while under supervision. The parole officer recommended revocation.

**SUMMARY OF EVIDENCE RELIED ON/FINDINGS OF FACT:**

With regard to MA Parole General Condition #1, the only evidence presented of subject's alleged failure to conduct himself in the manner of a responsible citizen is a temporary APO and case entries made by the MA parole officer indicating that an APO was issued. The Division concedes that this temporary restraining order was later dismissed after a two-party hearing. The Division offered no additional testimony or evidence to support subject's alleged "irresponsible behavior." Clear and convincing evidence is not found that subject failed to conduct himself in the manner of a responsible citizen. The violation is not sustained.

With regard to NJ Parole General Condition #7 / MA Parole Special Condition, subject admitted to traveling to Georgia and Indiana without permission. Regarding the trip to Maine, Mr. Ilganayev asserted that subject was granted permission to take this trip, but was unable to present any evidence of this permission. The parole officer testified as to the content of the MA parole officer's report which specifically indicates that subject was not granted permission or a travel pass to Maine. This hearing officer finds that in response to Mr. Ilganayev's tacit admission to the Maine trip, the parole officer credibly and reliably testified as to the content of the MA parole officer's reports, specifically that subject was not granted permission to travel to Maine. However, the photographs submitted by the Division were completely illegible and cannot support an allegation of unauthorized travel to a location based only on the location tags. Similarly, the Division presented no evidence or corroborating witness testimony that subject actually took the trips outlined in the itinerary printouts. This hearing officer finds clear and convincing evidence exists to sustain this violation only with regard to the Georgia, Indiana and Maine trips. The balance of the violation is not sustained.

With regard MA Parole General Condition #2, the only evidence presented of subject's alleged failure to notify his parole officer of a change of residence are two leases signed by subject. The Division presented no additional evidence or corroborating witness testimony to prove subject actually changed his address to one of these locations. This hearing officer does not find clear and convincing evidence that subject failed to notify his parole officer of a change of residence. The violation is not sustained.

Page 5 of 6

**Name:** Ernest Dubose  **SBI#:** 314757E  **Location:** SSCF

## HEARING OFFICER'S RECOMMENDATION:

Subject is a 38-year-old individual who is serving a term of parole on the offenses of Conspiracy to Commit False Contract Payment Claims, second degree, Official Misconduct, second degree, Bribery – Violation of Official Duty, second degree, Theft by Deception, second degree, and False Contract Payment Claims, second degree. According to the PSI, subject and a codefendant defrauded the New Jersey Department of Transportation of $10,000. Subject was paroled on August 11, 2016, with a maximum expiration date of July 8, 2019.

The record reflects that subject was compliant with supervision except for three unauthorized trips out-of-state. The parole officer testified that because of his level of compliance, it is likely that subject would have been granted permission for these trips had he asked.

The violations are not serious or persistent, and revocation is not desirable. However, it is recognized that subject is in need of closer supervision. It is recommended that subject be continued on parole to any detainer(s) initially, and then to the Electronic Monitoring Program for the duration of his term of supervision. It is also recognized that subject's volatile relationship with Ms. Ojugbele is problematic and poses a potential barrier to successful completion of parole. Therefore, it is also recommended that subject refrain from contact with Morayo Ojugbele until such time as they enter an appropriate couple's counseling program as approved by the assigned parole officer or until contact is authorized by the appropriate court.

## MAXIMUM DATE INFORMATION:

Release Date: August 11, 2016

Parole Warrant Issued: November 16, 2018  Original Parole Expiration Date: July 8, 2019

Date of Custody: November 16, 2018  Adjusted Parole Expiration Date: July 8, 2019*

*This date is based upon information contained in the New Jersey State Parole Board records. The actual Adjusted Maximum Date will be determined by the New Jersey Department of Corrections.

# NEW JERSEY STATE PAROLE BOARD
## NOTICE OF DECISION
### PAROLE SUPERVISION

**Name:** Ernest Dubose              **SBI#:** 314757E              **Location:** SSCF

Be advised that on January 30, 2019, the New Jersey State Parole Board – Board panel reviewed the attached summary prepared as a result of the revocation hearing conducted on January 25, 2019, and concurs with the findings of fact by the Hearing Officer. The Board panel finds that clear and convincing evidence exists that you violated the following condition(s) of your parole supervision:

Parole General Condition #7 / MA Parole Special Condition – Obtain permission prior to leaving the state of the approved residence for any purpose.

The Board panel finds that your commission of the above-noted violation(s) is not serious or persistent and that revocation is not desirable. Accordingly, the Board panel has rendered the following determination:

PAROLE SUPERVISION IS HEREBY NOT REVOKED. YOU ARE CONTINUED ON PAROLE TO ANY DETAINER(S) INITIALLY, THEN TO THE ELECTRONIC MONITORING PROGRAM (EMP) ALSO REFRAIN FROM CONTACT WITH OR THROUGH A THIRD PARTY, BUT NOT LIMITED TO, VERBAL, PHYSICAL, WRITTEN, OR ELECTRONIC WITH MORAYO OJUGBELE UNTIL YOU AND MS. OJUGBELE ENTER AN APPROPRIATE COUPLE'S COUNSELING PROGRAM APPROVED BY THE ASSIGNED PAROLE OFFICER, OR UNTIL CONTACT IS AUTHORIZED BY THE APPROPRIATE COURT AND YOU ARE SUBJECT TO THE FOLLOWING SPECIAL CONDITION(S):

As an additional special condition of parole, prior to the effectuation of this decision, you are required to comply with all rules and regulations of your institutional housing location. Failure to do so may result in the initiation of revocation proceedings.

Successful completion of EMP is now a special condition of parole.

**TRUDY STEINHARDT**              **ROBERT BALICKI**
Board Member                      Board Member

**Date of Warrant:** November 16, 2018
**Date of Custody:** November 16, 2018
**Adjusted Max Date:** July 8, 2019

Name: Ernest Dubose                         SBI#: 314757E                         Location: SSCF

## HEARING SUMMARY

**INTRODUCTION:**

A parole violation hearing was conducted on January 25, 2019, by Hearing Officer Eric S. Caravella from the State Parole Board District Office #11 in New Brunswick. Subject appeared via video teleconference (VTC) from Southern State Correctional Facility (SSCF). Representing the Division of Parole (Division) was Senior Parole Officer Juanita Cherry of District Office (DO) #20 appearing telephonically. Representing subject was attorney Migir Ilganayev, Esq., who appeared via VTC from DO #4 in Jersey City.

Mr. Ilganayev acknowledged having received a copy of the Notice of Probable Cause Hearing (C39) dated December 11, 2018, containing the alleged violations of the conditions of mandatory supervision, the evidence with respect to those violations and subject's rights with respect to the parole violation hearing process. Mr. Ilganayev was present pursuant to subject's right to representation by counsel, and he confirmed that he had sufficient opportunity to review the allegations with his client prior to the start of the hearing.

Parties were informed of the nature and purpose of the parole violation hearing and of the right to a separate probable cause hearing (PCH) and determination, as well as the right to a final parole revocation hearing (FRH). The standard of evidence for each proceeding was explained and, upon parties acknowledging an understanding of the standard of evidence and the process, Mr. Ilganayev elected to waive the PCH and proceed directly to conducting the FRH.

Subject was sentenced on May 22, 2015, to an aggregate six-year term of incarceration on the offenses of Conspiracy to Commit False Contract Payment Claims, second degree, Official Misconduct, second degree, Bribery – Violation of Official Duty, second degree, Theft by Deception, second degree, and False Contract Payment Claims, second degree. According to the Pre-Sentence Investigation (PSI), subject and a codefendant defrauded the New Jersey Department of Transportation of $10,000. Subject was paroled on August 11, 2016, with a maximum expiration date of July 8, 2019.

This hearing officer administered the oath to all testifying parties.

The parole officer testified that the warrant was issued on November 16, 2018, by Sergeant Van Mater and enforced the same date at MCI Cedar Junction. The parole officer testified that the warrant was issued for "parole violations."

Subject is currently 38 years of age.

**PAROLE OFFICER'S OVERVIEW:**

The parole officer reviewed subject's term of supervision by testifying to the following:

Subject commenced supervision on August 11, 2016, and was initially released to a New Jersey (NJ) parole plan to reside with his girlfriend. Subject advised his parole officer that he and his girlfriend wished to move to Boston to reside with subject's mother. Subject requested to transfer his supervision to the Commonwealth of Massachusetts (MA) in April of 2017. The Division did not oppose subject's transfer request because he was doing well under supervision. Subject reported to MA Parole on June 21, 2017. MA Parole reported to NJ that subject continued to do well under supervision. In August of 2018, subject notified his parole officer that he had split up with his girlfriend after the birth of their daughter and that his girlfriend had moved out of his mother's house to an apartment in Quincy. Subject's parole term remained uneventful until November of 2018 when NJ received a Violation Report Requiring Retaking which indicated a 14-day restraining order had been filed against subject by his girlfriend on October 10, 2018. The report also indicated that a number of other parole violations were discovered by MA Parole, including subject traveling out-of-state and out-of-country without approval, as well as maintaining an alternate address.

Page 1 of 6

**Name:** Ernest Dubose　　　　　　　**SBI#:** 314757E　　　　　　　**Location:** SSCF

## SUMMARY OF TESTIMONY/EVIDENCE SUBMITTED:

The parole officer read the following alleged violations of parole into the record as reflected in the C39:

MA Parole General Condition #1 – Subject failed to conduct himself in the manner of a responsible citizen. This is evidenced by subject's conduct on or before October 10, 2018, which resulted in an Abuse Prevention Order (APO) being issued by the Quincy District Court. *Subject entered a plea of not guilty to this violation.*

NJ Parole General Condition #7 / MA Parole Special Condition[1] – Subject failed to obtain permission prior to leaving the state of his approved residence for any purpose. This is evidenced by subject's travel without permission to: Indiana from May 18, 2018, to May 26, 2018; Georgia from March 22, 2018, to March 25, 2018; as well as to New York, Boston, Mexico, Jamaica, Cayman Islands, New Orleans and Alabama. *Subject entered a plea of guilty with an explanation to this violation with regard to the Indiana and Georgia trips only. Subject entered a plea of not guilty to the rest of the alleged violations.*

MA Parole General Condition #2 – Subject failed to notify his parole officer of any change in residence. This is evidenced by subject's failure to notify his parole officer of his maintaining an alternate address during his MA parole supervision. *Subject entered a plea of not guilty to this violation.*

Regarding MA Parole General Condition #1, the parole officer entered the following documents into the record: APO Docket #1856RO1071, issued by Ms. Morayo Ojugbele against subject on October 10, 2018, by Quincy District Court (three pages, marked into evidence as S1); MA Parole Violation Report authored by Parole Officer Kevin Devlin on October 14, 2018, (two pages, marked into evidence as S2); APO Docket #1856RO1071 termination order dated November 9, 2018, (two pages, marked into evidence as S3); and MA Parole Board Client Case Summary Report dated August 28, 2018, to November 6, 2018 (five pages, marked into evidence as S4). The parole officer testified that S1 shows an APO was issued against subject on October 10, 2018. The parole officer read from the narrative in S2 which stated that subject was doing well under supervision until his relationship with his girlfriend (Ms. Ojugbele) soured and a restraining order (APO) was filed. The parole officer testified that S3 showed the APO was later terminated on November 9, 2018. The parole officer referenced S4 and testified that the supervision entries relevant to the investigation of and issuance of the restraining order were redacted and marked confidential.

Mr. Ilganayev conducted a cross examination of the parole officer. In response to Mr. Ilganayev's questions, the parole officer testified that according to S2, the MA parole officer became aware of a number of parole violations committed by subject; that the issuance of a restraining order is a very serious matter; that subject was returned to custody based on all of his parole violations; and that she is aware the APO had been dismissed. The parole officer further testified that she is aware the MA parole officer had spoken to subject's girlfriend; that subject's girlfriend made allegations that subject had been abusive; that it is possible subject's girlfriend was upset that subject was trying to gain custody of their child and made false accusations to obtain an APO; and that the MA parole officer did not provide any proof of abusive behavior such as text messages.

Subject then testified that the MA parole officer provided no proof of abusive behavior leading to the issuance of an APO; that the APO was later dismissed after a two-party hearing; that the APO was only temporary; that the issuance of a temporary APO does not meet the standard to revoke supervision; that a final restraining order was never issued; but that parole did not await the result of the restraining order and "jumped the gun" by arresting him too soon.

Mr. Ilganayev then entered the following document into the record: email exchange between subject and Ms. Ojugbele on October 7, 2018, (one page, marked into evidence as D1). Mr. Ilganayev explained that this email exchange shows

---

[1] Subject's alleged violation of the MA Special Condition was listed separately from NJ General Condition #7 in the C39. The language of the MA Special Condition is "Comply with sending state's conditions." The Division alleges subject violated NJ General Condition #7, thereby violating the MA Special Condition. As the circumstances of the alleged violations are identical, the two conditions were combined for the purposes of this summary and recommendation.

**Name:** Ernest Dubose                                **SBI#:** 314757E                                **Location:** SSCF

that subject felt he was no longer able to negotiate with Ms. Ojugbele in good faith regarding the custody of their daughter, and that subject planned to take her to court. Mr. Ilganayev stated that Ms. Ojugbele then obtained an APO to stop subject from taking their daughter from her, and because she knew that it would result in subject's return to custody.

Subject then entered the following documents into the record: email from Ms. Ojugbele to subject dated October 8, 2018, (one page, marked into evidence as D2); Norfolk Probate and Family Court Motion for Temporary Orders dated October 3, 2018, (two pages, marked into evidence as D3); and Progressive Auto Insurance policy documents (three pages, marked into evidence as D4). Subject testified that D2 shows that Ms. Ojugbele was asking subject to unblock her so they could discuss their daughter, and also that he rescind his court order so they can figure out their daughter's visitation schedule. Subject testified that this email was sent two days before Ms. Ojugbele filed for the APO. Subject testified that D3 shows he filed an application for custody of his daughter and the court ordered that all communication with Ms. Ojugbele occur through a "Family Wizard" so that their conversations can be mediated and recorded. Subject testified that this Order was signed one week before Ms. Ojugbele filed for an APO. Lastly, subject testified that Ms. Ojugbele claimed in her affidavit for the APO that subject stole her car, but D4 reflects that the car actually belonged to him.

*At this point in the hearing, SSCF Custody Staff returned subject to his housing unit. Before he departed, subject and his counsel were granted an opportunity to consult privately and afterward they both consented to the hearing continuing in subject's absence with Mr. Ilganayev continuing to represent subject. The parole officer also consented to continuing the hearing in subject's absence.*

With regard to NJ Parole General Condition #7 / MA Parole Special Condition, the parole officer entered the following documents into the record: MA Parole Conditions signed June 21, 2017, (one page, marked into evidence as S5); printouts of airline flight itinerary for subject and Ms. Ojugbele for a trip from Boston to Atlanta and back from March 22, 2018, to March 25, 2018, (six pages, marked into evidence as S6); printouts of email from Ms. Ojugbele to MA Parole Officer Devlin depicting cell phone photos of a trip to Maine in August of 2017 (six pages, marked into evidence as S7); printouts of airline flight itinerary and hotel confirmation for subject and Ms. Ojugbele for a trip from Philadelphia to New Orleans and back from March 4, 2017, to March 15, 2017, (15 pages, marked into evidence as S8); printouts of email from Ms. Ojugbele to MA Parole Officer Kevin Devlin depicting cell phone photos dated from August of 2016 to March of 2017 with location tags of Brooklyn, Boston, New Jersey, Gulf of Mexico, Caribbean Sea, Montego Bay, Grand Cayman, Cozumel Island, and New Orleans (11 pages, marked into evidence as S9); printouts of email from Ms. Ojugbele to MA Parole Officer Kevin Devlin depicting cell phone photos of a trip to Mobile, AL in February of 2017 (nine pages, marked into evidence as S10).[2] The parole officer testified that these documents were sent to the MA parole officer by subject's girlfriend; that the flight and hotel itineraries show that subject and his girlfriend took trips out of state together; and that the photos presented, although illegible, contain location tags that reflect subject and his girlfriend visited a number of locations together both out-of-state and out-of-country.

Mr. Ilganayev entered the following documents into the record: emailed color photo of the first page of subject's passport (one page, marked into evidence as D5); MA Parole Board Client Case Summary Reports dated July 17, 2017, to September 5, 2017, (one page, marked into evidence as D6); MA Parole Board Client Case Summary Reports dated June 21, 2017, to October 16, 2018, (six pages, marked into evidence as D7). Mr. Ilganayev stated that the itineraries presented may have been planned, but subject never went on those trips. Mr. Ilganayev stated that subject surrendered his passport prior to being released on parole; that subject could not have traveled out of the country without one; and that D5 shows that his current passport was not issued until February 14, 2018. Mr. Ilganayev stated that they requested a complete version of subject's MA Parole Board Client Case Summary Reports, but they were only sent the odd pages (D7) and page 10 (D6). Mr. Ilganayev stated that subject had permission to travel to Maine but that the evidence of this permission may be documented in one of the missing pages of the Client Case Summary

---

[2] Mr. Ilganayev objected to the introduction of all of the photos as they are entirely illegible. The parole officer testified that her photos are also illegible. The photos contained within this hearing officer's C39 are also illegible. This hearing officer allowed the introduction of the photos and advised Mr. Ilganayev that he may challenge their authenticity or contents on cross examination.

Page 3 of 6

**Name:** Ernest Dubose                    **SBI#:** 314757E                    **Location:** SSCF

Report. Mr. Ilganayev stated that given the evidence of Ms. Ojugbele's dishonest nature, the information she allegedly provided should be taken with a grain of salt. Mr. Ilganayev stated that nothing can be discerned from the photos entered as they are completely illegible, and stated also that photo location tags can be easily manipulated.

The parole officer testified that the Parole Violation Report (S2) clearly lists subject's unapproved travel to Maine as one of his violations. The parole officer referenced page two of the document which specifically indicates subject traveled to Maine without a travel permit or permission from the parole officer.

Regarding MA Parole General Condition #2, the parole officer entered the following documents into evidence: Wellington Parkside Apartments Lease Agreement in subject's and Ms. Ojugbele's names, signed by subject on April 12, 2017, (six pages, marked into evidence as S11); Wellington Parkside Occupancy Addendum and Free Rent Addendum in subject's and Ms. Ojugbele's names, signed by subject on April 12, 2017, (two pages, marked into evidence as S12); 550 Victory Road, Unit #227, Quincy, MA – Lease Agreement and Addenda in subject's and Ms. Ojugbele's names, signed by subject on March 21, 2018, (five pages, marked into evidence as S13). The parole officer testified that subject was approved to live with his mother in Boston; that subject signed a lease in Wellington Parkside Apartments (S11 and S12) for a lease term period of June 14, 2017, to June 30, 2018; that subject also signed a lease in Quincy (S13) for a lease term period of March 31, 2018, to March 30, 2019; that neither of these addresses are subject's parole-approved address; and that subject is in violation of the condition because he was maintaining an alternate address.

Mr. Ilganayev conducted a cross examination of the parole officer. In response to Mr. Ilganayev's questions, the parole officer testified that she has no proof that subject actually lived at either of these addresses.

Mr. Ilganayev entered the following documents into evidence: 550 Victory Road, Unit #227, Quincy, MA – Lease Agreement and Addenda in subject and Ms. Ojugbele's names, signed by subject on March 21, 2018, (five pages, marked into evidence as D8). Mr. Ilganayev stated that subject may have signed leases at addresses other than his mother's house, but subject never resided at either place. Mr. Ilganayev stated that D8 shows a rental time period that overlaps S12, which is evidence that subject was not residing at Wellington Parkside. Mr. Ilganayev stated that subject merely cosigned a lease for an apartment in Quincy where his girlfriend could reside after their relationship soured and she moved out of subject's mother's house.

With regard to subject's trip to Georgia from March 22, 2018, to March 25, 2018, Mr. Ilganayev stated that subject admits to taking this trip without permission; that subject's girlfriend was experiencing a problematic pregnancy; that they traveled to Georgia to visit subject's cousin; that subject wanted to introduce his girlfriend to his family before her pregnancy progressed too far to travel; that he regrets traveling without permission; that he did so in good faith; and that subject did not commit any crimes, hurt anyone or do any drugs while he was traveling.

With regard to subject's trip to Indiana from May 18, 2018, to May 26, 2018, Mr. Ilganayev entered the following document into the record: acceptance letter from Kelley School of Business (two pages, marked into evidence as D9). Mr. Ilganayev stated that subject admits to taking this trip without permission; that he did so to attend school orientation; that he regrets traveling without permission; that he did so in good faith; and that subject did not commit any crimes, hurt anyone or do any drugs while he was traveling.

The parole officer testified that the reports indicate subject was in compliance with supervision at the time, and had subject communicated his need to travel is likely that the MA parole officer would have granted subject permission.

**ATTORNEY'S CLOSING STATEMENT:**

In closing, Mr. Ilganayev stated that the purpose of parole is to enable rehabilitation; that subject has done an incredible amount of work to return to society as a productive citizen; and that a return to prison would ruin everything he has done. Mr. Ilganayev stated that subject enrolled in school and was working and providing for his child.

**Name:** Ernest Dubose**SBI#:** 314757E**Location:** SSCF

Mr. Ilganayev stated that clear and convincing evidence does not exist that subject seriously or persistently violated the conditions of parole. Mr. Ilganayev stated that no evidence was presented that subject was abusive; that subject's girlfriend is an unreliable source; and that she used the system to incarcerate subject.

Mr. Ilganayev stated that subject was not using drugs or alcohol; did not commit any crimes; is a student and a father; and has already missed a significant portion of his daughter's life. Mr. Ilganayev stated that subject has an ongoing custody battle for his daughter that he can better fight when he is outside of prison.

Mr. Ilganayev stated that subject does admit to traveling without permission; but that these two violations in two and a half years are no basis for revocation of supervision. Mr. Ilganayev stated that subject has been incarcerated since October of 2018 and has more than paid for his mistakes.

**PAROLE OFFICER'S RECOMMENDATION:**

The parole officer testified that subject's term of supervision was uneventful until his relationship with Ms. Ojugbele soured and a 14-day restraining order was issued. The parole officer testified that numerous other parole violations were then discovered. The parole officer testified that no evidence was presented that subject cancelled his trips as he claimed. The parole officer testified that the itineraries show that subject traveled without permission. The parole officer testified that had subject communicated with his parole officer, it is likely he would have received permission to travel. The parole officer testified that it is not a minor violation to leave the state without approval, nor is it minor to have a restraining order issued while under supervision. The parole officer recommended revocation.

**SUMMARY OF EVIDENCE RELIED ON/FINDINGS OF FACT:**

With regard to MA Parole General Condition #1, the only evidence presented of subject's alleged failure to conduct himself in the manner of a responsible citizen is a temporary APO and case entries made by the MA parole officer indicating that an APO was issued. The Division concedes that this temporary restraining order was later dismissed after a two-party hearing. The Division offered no additional testimony or evidence to support subject's alleged "irresponsible behavior." Clear and convincing evidence is not found that subject failed to conduct himself in the manner of a responsible citizen. The violation is not sustained.

With regard to NJ Parole General Condition #7 / MA Parole Special Condition, subject admitted to traveling to Georgia and Indiana without permission. Regarding the trip to Maine, Mr. Ilganayev asserted that subject was granted permission to take this trip, but was unable to present any evidence of this permission. The parole officer testified as to the content of the MA parole officer's report which specifically indicates that subject was not granted permission or a travel pass to Maine. This hearing officer finds that in response to Mr. Ilganayev's tacit admission to the Maine trip, the parole officer credibly and reliably testified as to the content of the MA parole officer's reports, specifically that subject was not granted permission to travel to Maine. However, the photographs submitted by the Division were completely illegible and cannot support an allegation of unauthorized travel to a location based only on the location tags. Similarly, the Division presented no evidence or corroborating witness testimony that subject actually took the trips outlined in the itinerary printouts. This hearing officer finds clear and convincing evidence exists to sustain this violation only with regard to the Georgia, Indiana and Maine trips. The balance of the violation is not sustained.

With regard MA Parole General Condition #2, the only evidence presented of subject's alleged failure to notify his parole officer of a change of residence are two leases signed by subject. The Division presented no additional evidence or corroborating witness testimony to prove subject actually changed his address to one of these locations. This hearing officer does not find clear and convincing evidence that subject failed to notify his parole officer of a change of residence. The violation is not sustained.

**Name:** Ernest Dubose      **SBI#:** 314757E      **Location:** SSCF

### HEARING OFFICER'S RECOMMENDATION:

Subject is a 38-year-old individual who is serving a term of parole on the offenses of Conspiracy to Commit False Contract Payment Claims, second degree, Official Misconduct, second degree, Bribery – Violation of Official Duty, second degree, Theft by Deception, second degree, and False Contract Payment Claims, second degree. According to the PSI, subject and a codefendant defrauded the New Jersey Department of Transportation of $10,000. Subject was paroled on August 11, 2016, with a maximum expiration date of July 8, 2019.

The record reflects that subject was compliant with supervision except for three unauthorized trips out-of-state. The parole officer testified that because of his level of compliance, it is likely that subject would have been granted permission for these trips had he asked.

The violations are not serious or persistent, and revocation is not desirable. However, it is recognized that subject is in need of closer supervision. It is recommended that subject be continued on parole to any detainer(s) initially, and then to the Electronic Monitoring Program for the duration of his term of supervision. It is also recognized that subject's volatile relationship with Ms. Ojugbele is problematic and poses a potential barrier to successful completion of parole. Therefore, it is also recommended that subject refrain from contact with Morayo Ojugbele until such time as they enter an appropriate couple's counseling program as approved by the assigned parole officer or until contact is authorized by the appropriate court.

### MAXIMUM DATE INFORMATION:

Release Date: August 11, 2016

Parole Warrant Issued: November 16, 2018      Original Parole Expiration Date: July 8, 2019

Date of Custody: November 16, 2018      Adjusted Parole Expiration Date: July 8, 2019*

*This date is based upon information contained in the New Jersey State Parole Board records. The actual Adjusted Maximum Date will be determined by the New Jersey Department of Corrections.