UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ERNEST J. DUBOSE a/k/a DAYO DUBOSE, | * * * | |
| Plaintiff, | * * | |
| v. | * * | |
| COMMONWEALTH OF MASSACHUSETTS, AKINBAMI OJUGBELE, ABIODUN OJUGBELE, MORAYO OJUGBELE, and KEVIN DEVLIN, | * * * * * * * * | Civil Action No. 20-cv-11084-ADB |
| Defendants. | * * | |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS**

BURROUGHS, D.J.

Plaintiff Ernest J. Dubose, who is proceeding *pro se*, brings this action against the Commonwealth of Massachusetts (the "Commonwealth"), Kevin Devlin, Akinbami Ojugbele ("Ak. Ojugbele"), Abiodun Ojugbele ("Ab. Ojugbele"), and Morayo Ojugbele ("M. Ojugbele," together with Ak. Ojugbele and Ab. Ojugbele, the "Ojugbeles," and, the Ojugbeles, together with the Commonwealth and Devlin, "Defendants"), alleging that Defendants conspired to deprive him of various civil rights. [ECF No. 17 ("Am. Compl.")]. Currently before the Court are Defendants' motions to dismiss. [ECF No. 18 (the Commonwealth and Devlin); ECF No. 20 (the Ojugbeles)]. For the reasons set forth below, Defendants' motions are GRANTED.

I.    BACKGROUND

    A.    Factual Background

For purposes of the instant motion to dismiss, the Court, as it must, "accept[s] as true all well-pleaded facts alleged in the complaint and draw[s] all reasonable inferences therefrom in the pleader's favor." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013).

On May 22, 2015, Dubose was sentenced to six years' incarceration for various fraud-related offenses in New Jersey. [Am. Compl. ¶ 24]. On August 11, 2016, he was paroled and permitted to live with M. Ojugbele, his girlfriend, in New Jersey. [Id. ¶ 25]. In April 2017, Dubose requested that he be allowed to move to Massachusetts, where he intended to live with M. Ojugbele at his mother's home, and the New Jersey parole office approved his request. [Id. ¶ 26]. On June 1, 2017, Dubose reported to the parole office in Massachusetts and met Devlin, his new parole officer. [Id. ¶ 27]. In August 2018, Dubose told Devlin that he and M. Ojugbele had recently had a child together but were going to separate. [Id. ¶ 28].

On October 10, 2018, M. Ojugbele obtained a temporary restraining order ("TRO") against Dubose. [Am. Compl. ¶ 29]. The TRO, in turn, triggered the issuance of a violation report, which was sent to the New Jersey parole office in November 2018. [Id.]. In addition to noting the existence of the TRO, the report listed multiple other parole violations, including traveling (out of state and out of the country) without permission and maintaining a second address without properly notifying his parole officer. [Id. ¶ 30]. On November 16, 2018, based on the violation report, an arrest warrant was issued, Dubose's parole was temporarily revoked, and he was taken into custody. [Id. ¶ 31]. Later that month, after a hearing, the TRO was dissolved because there was insufficient evidence. [Id. ¶ 32].

In January 2019, Dubose, who was represented by counsel, participated remotely in a parole revocation hearing before the New Jersey parole board. [Am. Compl. ¶ 33]. At the hearing, a senior parole officer testified and various documents were introduced into evidence. [Id. ¶¶ 34–42]. According to Dubose, the testimony and documents demonstrated that: (1) although he did leave the state and country without permission, those violations were not serious and would not have necessitated revocation of his parole, [id. ¶ 42]; (2) he should not have been arrested based on the issuance of a TRO and Devlin "jumped the gun" by doing so, [id. ¶ 37]; and (3) M. Ojugbele was dishonest and sought a TRO to gain leverage in a custody dispute, [id. ¶ 39].[1]

In sum, Dubose's core allegation is that Devlin and the Ojugbeles conspired to have him arrested on a trumped-up parole violation—because of a TRO issued based on flimsy or fabricated allegations—to prejudice him in his ongoing child custody battle.[2]

### B.  Procedural Background

Dubose filed his original complaint on June 8, 2020. [ECF No. 1]. In July 2020, Defendants moved to dismiss. [ECF No. 5 (the Ojugbeles); ECF No. 8 (the Commonwealth and Devlin)]. On September 4, 2020, the Court ordered Dubose, who had not yet opposed Defendants' motions, to show cause as to why his complaint should not be dismissed. [ECF No. 10]. Because Dubose did not show cause by the Court's deadline, the Court dismissed his complaint and closed the case. [ECF Nos. 11, 12]. On October 14, 2020, Dubose moved for relief from judgment, citing delays in his receipt of court filings and the COVID-19 pandemic.

---

[1] As far as the Court can tell, M. Ojugbele did not participate in the hearing.

[2] Although he does not specify when, Dubose also alleges that, on multiple occasions, the Ojugbeles threatened him with the prospect of prison time and/or contacting Devlin. [Am. Compl. ¶¶ 43–44].

[ECF Nos. 13, 14].  The Court granted his motion and allowed him to file an amended complaint.  [ECF No. 15].

On November 16, 2020, Dubose filed his amended complaint.  [Am. Compl.].  He brings a claim under 42 U.S.C. § 1983 (Count I), a claim under Massachusetts General Laws Chapter 265, § 37 (Count II), and a claim under the Massachusetts Criminal Offender Records Information Act (the "CORI Act") (Count III), [id. ¶¶ 49–58], and seeks damages (compensatory, nominal, and punitive) as well as attorneys' fees and costs, [id. at 16].  Defendants moved to dismiss, [ECF No. 18 (the Commonwealth and Devlin); ECF No. 20 (the Ojugbeles)], and Dubose opposed, [ECF No. 22].

## II.    LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff.  See Gilbert v. City of Chicopee, 915 F.3d 74, 76, 80 (1st Cir. 2019).  "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The alleged facts must be sufficient to "state a claim to relief that is plausible on its face."  Id. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability."  Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Id. at 44 (quoting Iqbal, 556 U.S. at 679).  "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in

4

isolation, is plausible." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)). "The plausibility standard invites a two-step pavane." Elsevier, 732 F.3d at 80 (citing Grajales, 682 F.3d at 45). First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Second, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224).

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

## III. DISCUSSION

### A. Count I: Section 1983

#### 1. The Commonwealth

The Commonwealth argues that it is immune from a § 1983 suit under the state sovereign immunity doctrine. [ECF No. 19 at 7]. Dubose appears to concede that his § 1983 claim against the Commonwealth is improper. See [ECF No. 22 at 9–10 (not engaging with the Commonwealth's state sovereign immunity argument)].

The Supreme Court has held that "absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." Kentucky v. Graham, 473 U.S. 159, 169 (1985). The Commonwealth has not waived its immunity here, and § 1983 does not abrogate its sovereign immunity. Will v. Mich. Dep't of

State Police, 491 U.S. 58, 71 (1989) (holding that Congress did not override state sovereign immunity in connection with § 1983); Santiago v. Keyes, 839 F. Supp. 2d 421, 427 (D. Mass. 2012) ("The Supreme Court has made it clear that section 1983 does not abrogate a state's Eleventh Amendment immunity."). Accordingly, Count I as asserted against the Commonwealth must be dismissed.

        2.      Devlin

Devlin argues that he too cannot be sued in federal court because of state sovereign immunity. [ECF No. 19 at 7–9]. Dubose maintains that Devlin can, in fact, be sued. [ECF No. 22 at 9–10].

Devlin's potential immunity depends, in part, on whether Dubose is bringing his claim against Devlin in his personal or official capacity. With respect to § 1983, the Supreme Court has described the distinction as follows:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

Graham, 473 U.S. at 165–66 (citations and internal quotation marks omitted). Here, although Dubose repeatedly alleges that Devlin was acting in his "official capacity" when he allegedly wronged Dubose, [Am. Compl. ¶¶ 3, 14, 48, 50], his substantive assertion is that Devlin, personally, conspired with the Ojugbeles against Dubose, see [id. ¶ 3]. Put slightly differently, Dubose's quarrel is with Devlin himself, not with the Massachusetts parole office or any other

6

governmental entity. Giving Dubose the benefit of the doubt, Erickson, 551 U.S. at 94, the Court finds that he is asserting a claim against Devlin in his personal capacity.[3]

> As is well established, § 1983 creates no independent substantive rights, but rather provides a cause of action by which individuals may seek money damages for governmental violations of rights protected by federal law. Hence the requirement that, to state a claim under § 1983, a plaintiff must allege (1) the violation of a right protected by the Constitution or laws of the United States and (2) that the perpetrator of the violation was acting under color of law.

Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 621 (1st Cir. 2000) (citation omitted). The first element requires the plaintiff to show that the defendant caused the alleged violation. Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008).

Dubose has adequately alleged that Devlin was acting under color of law. See [Am. Compl. ¶¶ 3, 14, 48]. Accordingly, the validity of his § 1983 claim against Devlin depends on whether he has adequately pleaded that Devlin caused the violation of a federally-guaranteed right. In his amended complaint, Dubose asserts that a number of his rights were violated, including his right to freedom, his right to pursue custody of his child, his right to privacy, [id. ¶ 3], his right to liberty, and his right to due process, [id. ¶ 51]. His factual allegations, however, do not plausibly suggest a violation of any cognizable federal right.

---

[3] Devlin argues that, even in his personal capacity, he is absolutely immune from § 1983 liability because he was a parole officer carrying out a quasi-judicial function. [ECF No. 19 at 11]. Devlin is correct that "[p]arole officers performing functions related to helping the 'quasi-judicial body [of the Parole Board] to render a decision' are also absolutely immune from damages claims." Phillips v. Conrad, No. 10-cv-40085, 2011 WL 309677, at *7 (D. Mass. Jan. 28, 2011) (second alteration in original) (quoting Namey v. Reilly, 926 F. Supp. 5, 9–10 (D. Mass. 1996)). That principle, however, is inapplicable here because Dubose does not seem to be alleging that Devlin violated his rights merely by preparing materials upon which the parole board relied. Contra id. ("Thus, when parole officers prepare materials upon which the parole board will rely when making decisions to grant, deny, or revoke parole, they are protected by absolute immunity from damages liability."). Rather, Dubose alleges, among other things, that Devlin shared sensitive information with the Ojugbeles, [Am. Compl. ¶ 3], and encouraged M. Ojugbele to seek a restraining order, [id. ¶¶ 6, 15].

Disregarding legal conclusions, as the Court must when assessing a motion to dismiss, Elsevier, 732 F.3d at 80, Dubose alleges that Devlin did the following: (1) shared with the Ojugbeles "personal and confidential information" about Dubose, [Am. Compl. ¶ 3]; (2) informed the Ojugbeles as to what could result in the revocation of Dubose's parole, [id. ¶¶ 15, 44]; and (3) based on the TRO, issued a violation report and sent it to the New Jersey parole office, which resulted in the temporary revocation of Dubose's parole and his arrest, [id. ¶¶ 29–30]. Even assuming that all this is true, however, Dubose has not plausibly alleged that Devlin violated a federally-protected right.

In Morrissey v. Brewer, the Supreme Court discussed the interplay of the due process clause of the Fourteenth Amendment and the revocation of state parole. 408 U.S. 471 (1972). First, it concluded that "[r]evocation [of parole] deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." Id. at 480. Next, it concluded that the liberty of a parolee is important enough to warrant protection under the Fourteenth Amendment. Id. at 482. Finally, it turned to the minimum procedural protections that a state parole revocation proceeding must include to comport with due process. According to the Supreme Court, there are "two important stages in the typical process of parole revocation." Id. at 485.

The first stage concerns the preliminary hearing that follows the arrest and detention of the parolee. Morrisey, 408 U.S. at 485. For that stage, the court articulated the following procedural safeguards: (1) "the determination that reasonable ground exists for revocation of parole should be made by someone not directly involved in the case,"; (2) "[w]ith respect to the preliminary hearing before this officer, the parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has

8

committed a parole violation"; (3) "[a]t the hearing the parolee may appear and speak in his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer"; (4) "[t]he hearing officer shall have the duty of making a summary, or digest, of what occurs at the hearing in terms of the responses of the parolee and the substance of the documents or evidence given in support of parole revocation and of the parolee's position"; and (5) "[b]ased on the information before him, the officer should determine whether there is probable cause to hold the parolee for the final decision of the parole board on revocation." Id. at 485–87.

As to the second stage, the final revocation hearing, the court found that the minimum procedural requirements included:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

Morrisey, 408 U.S. at 489.

Dubose does not make clear whether the January 2019 hearing was his preliminary or final hearing, but, in any event, Dubose does not allege that he was deprived of any of the procedural safeguards for either stage described in Morrissey.[4] To the contrary, he specifically

---

[4] To the extent Dubose's complaint can be construed as alleging that Devlin's action constituted a violation of substantive due process, that claim fails. "To constitute a violation of substantive due process, state action must be 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Pimental v. City of Methuen, 323 F. Supp. 3d 255, 268 (D. Mass. 2018) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)). Here, even if Devlin's factual allegations regarding Devlin's conduct are true—i.e., that Devlin told the Ojugbeles about Dubose's parole conditions (including what violations could result in

committed a parole violation"; (3) "[a]t the hearing the parolee may appear and speak in his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer"; (4) "[t]he hearing officer shall have the duty of making a summary, or digest, of what occurs at the hearing in terms of the responses of the parolee and the substance of the documents or evidence given in support of parole revocation and of the parolee's position"; and (5) "[b]ased on the information before him, the officer should determine whether there is probable cause to hold the parolee for the final decision of the parole board on revocation." Id. at 485–87.

As to the second stage, the final revocation hearing, the court found that the minimum procedural requirements included:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

Morrisey, 408 U.S. at 489.

Dubose does not make clear whether the January 2019 hearing was his preliminary or final hearing, but, in any event, Dubose does not allege that he was deprived of any of the procedural safeguards for either stage described in Morrissey.[4] To the contrary, he specifically

---

[4] To the extent Dubose's complaint can be construed as alleging that Devlin's action constituted a violation of substantive due process, that claim fails. "To constitute a violation of substantive due process, state action must be 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Pimental v. City of Methuen, 323 F. Supp. 3d 255, 268 (D. Mass. 2018) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)). Here, even if Devlin's factual allegations regarding Devlin's conduct are true—i.e., that Devlin told the Ojugbeles about Dubose's parole conditions (including what violations could result in

committed a parole violation"; (3) "[a]t the hearing the parolee may appear and speak in his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer"; (4) "[t]he hearing officer shall have the duty of making a summary, or digest, of what occurs at the hearing in terms of the responses of the parolee and the substance of the documents or evidence given in support of parole revocation and of the parolee's position"; and (5) "[b]ased on the information before him, the officer should determine whether there is probable cause to hold the parolee for the final decision of the parole board on revocation." Id. at 485–87.

As to the second stage, the final revocation hearing, the court found that the minimum procedural requirements included:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

Morrisey, 408 U.S. at 489.

Dubose does not make clear whether the January 2019 hearing was his preliminary or final hearing, but, in any event, Dubose does not allege that he was deprived of any of the procedural safeguards for either stage described in Morrissey.[4] To the contrary, he specifically

---

[4] To the extent Dubose's complaint can be construed as alleging that Devlin's action constituted a violation of substantive due process, that claim fails. "To constitute a violation of substantive due process, state action must be 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Pimental v. City of Methuen, 323 F. Supp. 3d 255, 268 (D. Mass. 2018) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)). Here, even if Devlin's factual allegations regarding Devlin's conduct are true—i.e., that Devlin told the Ojugbeles about Dubose's parole conditions (including what violations could result in

alleges that he attended his hearing, [Am. Compl. ¶ 33], the hearing officer was someone other than Devlin, [id. ¶ 33], Dubose was made aware of the alleged violations (and in fact admitted to some of them), [id. ¶ 34], and Dubose's attorney cross-examined witnesses and introduced evidence, [id. ¶¶ 36, 40]. Additionally, there was obviously a written statement issued by the parole officer presiding over the hearing because Dubose cites to it extensively. See, e.g., [id. ¶ 42]. Further, it is worth noting that Dubose's parole does not seem to have ultimately been revoked. [Id. ¶ 42 ("The violations are not serious or persistent, and revocation is not desirable.")]. Finally, even if Dubose were deprived of these procedural protections, he does not allege facts suggesting that Devlin, as opposed to the New Jersey parole board or some officer or agent thereof, caused that deprivation. Thus, based on the allegations in the amended complaint, Dubose has not plausibly alleged that Devlin violated his due process rights in connection with the temporary revocation of his parole.[5]

As to Dubose's allegations that his right to pursue custody of his child and his right to privacy were violated, those allegations are insufficient to state a § 1983 claim. First, Dubose has not identified a federally protected, unconditional right to seek custody of one's child, and the Court is aware of no such right. More importantly, even if such a right exists, Dubose does not actually allege that he was prevented from seeking custody. Rather, he alleges that because he was arrested, he "had no chance of winning a custody suit." [Am. Compl. ¶ 46]. Taking action that hinders a parent in a subsequent child custody battle is not, itself, a constitutional

---

revocation) and issued a violation report after the TRO was obtained—Devlin's conduct does not rise to the level of shocking the conscience.

[5] The fact that Dubose arguably should not have been arrested for his parole violations under New Jersey state law, see [Am. Compl. ¶¶ 37, 41], does not mean that a federally-guaranteed right was violated.

violation.  Whether Dubose was afforded a fair opportunity to explain the TRO and temporary revocation of his parole in family court when pursuing custody is beyond the Court's purview.

Second, with respect to privacy, Dubose seems to premise his claim on Devlin's disclosure of his "personal and confidential information" to the Ojugbeles.  [Id. ¶ 3].  Although Dubose does not make any factual allegations regarding what precisely was allegedly disclosed, the Court can infer that Devlin shared with the Ojugbeles the conditions of Dubose's parole.  See [id. ¶ 44].  Dubose has pointed to no constitutional or actionable federal principle that would prevent a parole officer from sharing parole conditions with the parolee's girlfriend or her parents.  Cf. Dasey v. Anderson, 304 F.3d 148, 155 (1st Cir. 2002) ("However, we are aware of no constitutional principle that would bar defendants from, as Dasey puts it, 'using information concerning [his] private life as the basis for terminating [his] employment.'") (alterations in original).  In fact, New Jersey's general parole conditions are codified in publicly-available regulations, see N.J. Admin. Code § 10A:71–6.4 ("An offender granted parole shall comply with the following general conditions of parole: . . ."), which undercuts the notion that Dubose's parole conditions were even confidential.

Thus, because he has not adequately pleaded that Devlin violated a federally-protected right, Dubose's § 1983 claim against Devlin fails, and Count I of the amended complaint as asserted against Devlin must be dismissed.[6]

---

[6] Devlin makes additional arguments as to why the complaint should be dismissed, including the fact that Dubose did not properly serve him.  [ECF No. 19 at 11–15].  Because the Court finds that Dubose has failed to state a § 1983 claim, and dismisses his state law claims, see infra, Section III.B, it does not reach these arguments.

11

### 3. The Ojugbeles[7]

Although there are certain circumstances in which a private person may be deemed a state actor for purposes of § 1983, Meuse v. Stults, 421 F. Supp. 2d 358, 362 (D. Mass. 2006) (describing scenarios "in which a private person's conduct may be fairly attributed to the state"), the Court need not consider them here because Dubose has not plausibly alleged that the Ojugbeles violated any right guaranteed by the Constitution or federal law, see Cruz-Erazo v. Rivera-Montanez, 212 F.3d at 621 (noting that violation of a federally-guaranteed right is essential to § 1983 claim). With respect to the Ojugbeles, Dubose alleges the following: (1) M. Ojugbele obtained a TRO against him, based on fabricated allegations, shortly after he told her that he was going to sue her for custody [Am. Compl. ¶¶ 29, 38–40, 47]; (2) the TRO was subsequently terminated for lack of evidence, [id. ¶ 32]; (3) the Ojugbeles "threatened [Dubose] with prison if he did not terminate his custody suit against [M. Ojugbele]," [id. ¶¶ 43, 44]; and (4) M. Ojugbele "persistently threatened to contact [Devlin] if [Dubose] did not comply with her requests," [id. ¶ 43]. Even if all these allegations are true, they do not plausibly suggest that the Ojugbeles violated one of Dubose's federally-protected rights.

Dubose has not identified any constitutional principle, or federal law, that gives him a right not to be threatened by his girlfriend (and her parents) or a right not to have a TRO issued based on false or exaggerated allegations. If his allegations are true, Dubose may well have legal recourse against the Ojugbeles under state law, but not under § 1983. Because he has not

---

[7] It is not entirely clear whether Dubose asserts a § 1983 claim against the Ojugbeles. Although he refers generally to "Defendants" in one relevant paragraph of the amended complaint, [Am. Compl. ¶ 51], he specifically identifies only Devlin in another, [id. ¶ 50]. Because Dubose is proceeding *pro se*, the Court will give him the benefit of the doubt and assume that he is asserting § 1983 claims against both Devlin and the Ojugbeles. See Erickson, 551 U.S. at 94.

adequately alleged that they violated any federally protected right, Count I as asserted against the Ojugbeles must be dismissed.[8]

### B. The Court Declines to Exercise Supplemental Jurisdiction Over Dubose's Remaining State Law Claims

Dubose asserts that the Court has subject matter jurisdiction because of the federal questions presented by his § 1983 claim. [Am. Compl. ¶ 18]. Although he makes some allegations regarding the parties' respective citizenships, those allegations are not sufficient to plausibly suggest that there is diversity jurisdiction. [Id. ¶ 22 (alleging that M. Ojugbele is a Massachusetts resident and her parents are New Jersey residents but failing to make allegations regarding his or Devlin's citizenship)].[9] Nor does he otherwise argue that diversity jurisdiction exists.[10] See [Am. Compl.; ECF No. 22]. Although his burden at the pleading stage is not particularly heavy, see Fed. R. Civ. P. 8(a)(1) ("A pleading that states a claim for relief must contain: [] a short and plain statement of the grounds for the court's jurisdiction"), Dubose has not met that burden with respect to diversity jurisdiction.

---

[8] The Ojugbeles makes additional arguments in favor of dismissal, including lack of personal jurisdiction. [ECF No. 21 at 2]. Because the Court finds that Dubose has failed to state a § 1983 claim, and dismisses his state law claims, see infra, Section III.B, it need not reach these arguments.

[9] He does allege that "all Parties to this action with the exception of the Commonwealth *formerly* resided in Massachsuetts," [Am. Compl. ¶ 19 (emphasis added)], but subject matter jurisdiction is assessed as of the time the complaint was filed, Grupo Dataflux v. Atlas Glob. Grp., L.P., 541 U.S. 567, 570 (2004).

[10] In fact, on the whole, Dubose's allegations (and other materials before the Court) suggest that there is not complete diversity, which is required under 28 U.S.C. § 1332. Celli v. Greenwich Ins. Co., 478 F. Supp. 3d 93, 95 (D. Mass. 2020) ("Diversity jurisdiction exists 'only when there is complete diversity, that is, when no plaintiff is a citizen of the same state as any defendant.'" (quoting Gabriel v. Preble, 396 F.3d 10, 13 (1st Cir. 2005))). For instance, the signature block of Dubose's original complaint lists a Massachusetts address, [ECF No. 1 at 16], which would indicate that he and M. Ojugbele were citizens of the same state at the time of filing.

"Federal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it.'" Industria Lechera De P.R., Inc. v. Beiró, No. 18-1347, 2021 WL 777213, at *2 (1st Cir. 2021) (quoting Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010)). Further, "[a]s a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit . . . will trigger the dismissal without prejudice of any supplemental state-law claims.'" Rossi v. Gemma, 489 F.3d 26, 39 (1st Cir. 2007) (quoting Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995)); 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."). Thus, having found that Dubose has failed to state a claim under federal law, and because Dubose has not alleged diversity jurisdiction, the Court declines to exercise supplemental jurisdiction over Dubose's state law claims and will dismiss them without prejudice.[11]

## IV.    CONCLUSION

Accordingly, for the reasons set forth above, Defendants' motions to dismiss, [ECF Nos. 18, 20], are **GRANTED**. Count I of the amended complaint is dismissed with prejudice. Counts II and III are dismissed without prejudice.

---

[11] In the interests of judicial efficiency, the Court notes that if Dubose seeks relief in a different forum, he should consider the fact that the particular Massachusetts statutes that he invokes in the amended complaint—Massachusetts General Laws Chapter 265, § 37 and Massachusetts General Laws Chapter 6, § 178—are both criminal statutes that do not provide for private causes of action. O'Neill v. Daimlerchrysler Corp., 538 F. Supp. 2d 304, 322 (D. Mass. 2008) ("[Massachusetts General Laws Chapter 265, § 37] is a criminal civil rights statute, which provides no civil cause of action."); Roggio v. Grasmuck, 988 F. Supp. 2d 130, 139 (D. Mass. 2013) (finding that § 178 of the CORI Act is a criminal statute that does not provide a private right of action).

**SO ORDERED.**

April 2, 2021                                                                 /s/ Allison D. Burroughs
                                                                              ALLISON D. BURROUGHS
                                                                              U.S. DISTRICT JUDGE